# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 10, 2007

## CORNELIUS BOALES v. STATE OF TENNESSEE

### Direct Appeal from the Circuit Court for Henderson County
### No. 06027-2    Donald H. Allen, Judge

---

### No. W2006-01866-CCA-R3-PC  - Filed October 17, 2007

---

Petitioner was convicted by a jury of one count of felony possession of cocaine with intent to sell, a class B felony, and one count of felony possession of marijuana with the intent to sale, a class E felony.  Petitioner was sentenced as a Range I offender to twelve years for the cocaine conviction and two years for the marijuana conviction to be served concurrently in the Tennessee Department of Correction and a $100,000 fine.  Petitioner's conviction was affirmed by this court. *See State v. Boales*, 2005 WL 517538, at *1. (Tenn. Crim. App., at Jackson, March 3, 2005) *perm. app. denied* (Tenn. June 27, 2005).  This Court also affirmed his sentence as to incarceration, but  reduced the fine imposed to $50,000. *See Boales*, 2005 WL 517538.  Petitioner timely filed a petition for post-conviction relief alleging ineffective assistance of trial counsel.  The trial court dismissed the petition.  After a thorough review of the record of the post-conviction hearing, this Court affirms the judgment of the trial court dismissing the petition.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA McGEE OGLE, JJ. joined.

George Morton Googe, District Public Defender; and Hewitt Chatman, Assistant Public Defender, Jackson, Tennessee for the appellant, Cornelius Boales

Robert E. Cooper, Attorney General and Reporter; David H. Findley, Assistant Attorney General; James G. Woodall, District Attorney General; and Alfred Lynn Earls, Assistant District Attorney General for the Appellee, State of Tennessee.

### OPINION

Petitioner claims in this appeal that his sentence for two counts of felony drug possession with the intent to sell is void or voidable due to ineffective assistance of counsel by his appointed trial counsel.

## I. Background

This Court summarized the proof at trial as follows in our opinion addressing the defendant's direct appeal:

> On April 18, 2002, Narcotics Investigator Michael Harper with the Lexington Police Department, along with Investigator Daniel Stoneburner of the Henderson County Sheriff's Department and other officers, executed a search warrant at the residence of the Appellant at 1565 Leo Woods Road in Cedar Grove. Two mobile homes were situated on the property, one occupied by the Appellant and the other occupied by the Appellant's mother. The police officers had driven to the location in an unmarked van, and several officers had been posted in "concealed" positions in the event the Appellant returned home.
>
> Approximately thirty minutes into the search of the homes, the Appellant and his girlfriend, Misty Birchett, drove up the driveway to the Appellant's residence in his mother's vehicle, which the Appellant had borrowed. Birchett was driving the vehicle with the Appellant in the passenger seat. When the vehicle came to a stop, officers surrounded the car and ordered the Appellant and Birchett out. The pat down of the Appellant by Investigator Harper revealed the presence of a small bag of marijuana and an orange plastic Easter egg containing crack cocaine in the Appellant's left front pants pocket. Investigator Stoneburner also observed the removal of the plastic egg containing cocaine and the bag containing marijuana from the Appellant's pocket. In addition, Stoneburner recovered a brown bag containing individual plastic bags of marijuana on the bench seat of the vehicle between the Appellant and Birchett. The marijuana in the Appellant's pants pocket weighed 5.7 grams, the crack cocaine in the Easter egg weighed 5.5 grams, and the marijuana found on the seat weighed 84.9 grams. The Appellant and Birchett were jointly indicted in a four-count indictment charging each alternatively with the possession of over 0.5 grams of cocaine with the intent to sell or deliver and alternative counts of possession of over 0.5 ounces of marijuana for purposes of sale or delivery.
>
> On the morning of the scheduled trial, Birchett pled guilty to possession of cocaine over 0.5 grams and possession of marijuana over 0.5 ounces. Testifying on behalf of the Appellant, Birchett stated that she and the Appellant lived together. She testified that the marijuana found on the seat belonged to her and not the Appellant. She stated that she had put the marijuana under the arm rest of the car when the Appellant picked her up that evening. Birchett admitted that she planned to sell the 84.9 grams of marijuana found on the seat and that the Appellant knew that she sold marijuana and cocaine. She stated that she never saw the Appellant with any cocaine that evening and never saw the officers remove a plastic Easter egg from the Appellant's pocket. However, she stated that she had two rocks of crack cocaine which she had placed in a small plastic bag. She explained that when the officers

began approaching the vehicle at the Appellant's mobile home, she threw the crack cocaine toward the passenger's side floorboard and never saw the cocaine again. The Appellant, testifying in his own defense, denied any knowledge of the cocaine and denied that Harper ever removed a plastic Easter egg from his pants pocket. He admitted that he had the 5.7 grams of marijuana in his pocket and that he had asked Birchett to drive so he "could roll about two or three blunts" from the "weed" on the way back home. He stated that he only learned of the larger bag of marijuana while en route to his residence. The Appellant stated that there were a number of plastic Easter eggs in the car "because it was Easter time." He surmised that the officers took one of the eggs from the car, recovered Birchett's two rocks from the floorboard, and placed them in the Easter egg. He offered no explanation as to why the officers would want to "plant" the evidence on him.

At the conclusion of the proof, the jury found the Appellant guilty of each count charged in the indictment. Additionally, the jury assessed the maximum fine of $100,000 for each of the class B felony convictions. The trial court merged the alternative counts, resulting in a conviction under Count 1, which charged class B felony possession with the intent to sell cocaine, and under Count 3, class E felony possession with the intent to sell marijuana. For the class B felony, the trial court imposed the $100,000 fine as fixed by the jury. At the conclusion of the sentencing hearing, the trial court also sentenced the Appellant, as a Range I offender, to the maximum sentence of twelve years for the cocaine conviction and the maximum sentence of two years for the marijuana conviction. The two sentences were ordered to be served concurrently.

*State v. Boales*, 2005 WL 517538, at *1 (Tenn. Crim. App., at Jackson, March 3, 2005) *perm. app. denied* (Tenn. June 27, 2005).

## II. Analysis

This court reviews a claim of ineffective assistance of counsel under the standards of *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975), and *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The petitioner has the burden to prove that (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to the defendant so as to deprive him of a fair trial. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996); *Butler v. State*, 789 S.W.2d 898, 899 (Tenn. 1990). The failure to prove either deficiency or prejudice justifies denial of relief; therefore, the court need not address the components in any particular order or even address both if one is insufficient. *Goad*, 938 S.W.2d at 370. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

The test in Tennessee to determine whether counsel provided effective assistance is whether his or her performance was within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. The petitioner must overcome the presumption that counsel's conduct falls within the wide range of acceptable professional assistance. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *State v. Honeycutt*, 54 S.W.3d 762, 769 (Tenn. 2001). Therefore, in order to prove a deficiency, a petitioner must show "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065).

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *Honeycutt*, 54 S.W.3d at 768. The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997); *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).

In *Baxter*, 523 S.W.2d at 936, our Supreme Court established that the services rendered should be within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in *Beasley v. United States*, 491 F.2d 687 (6th Cir. 1974), and *United States v. DeCoster*, 487 F.2d 1197 (D.C. Cir. 1973). *Id*. In *Beasley*, the court stated:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations. . . . Defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner.

491 F.2d at 696 (citations omitted). In *DeCoster*, the court stated:

> In General--Counsel should be guided by the American Bar Association Standards for the Defense Function. They represent the legal profession's own articulation of guidelines for the defense of criminal cases.
>
> Specifically--(1) Counsel should confer with his client without delay and as often as necessary to elicit matters of defense, or to ascertain that potential defenses are

unavailable. Counsel should discuss fully potential strategies and tactical choices with his client.

(2) Counsel should promptly advise his client of his rights and take all actions necessary to preserve them. . . . Counsel should also be concerned with the accused's right to be released from custody pending trial, and be prepared, where appropriate, to make motions for a pre-trial psychiatric examination or for the suppression of evidence.

(3) Counsel must conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed. The Supreme Court has noted that the adversary system requires that "all available defenses are raised" so that the government is put to its proof. This means that in most cases a defense attorney, or his agent, should interview not only his own witnesses but also those that the government intends to call, when they are accessible. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. And, of course, the duty to investigate also requires adequate legal research.

487 F.2d at 1203-04.

The trial court's findings of fact are afforded the weight of a jury verdict, and this court is bound by the trial court's findings unless the evidence in the record preponderates against those findings. *Henley*, 960 S.W.2d at 578; *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the trial judge. *Honeycutt*, 54 S.W.3d at 766. Questions concerning the credibility of witnesses and the weight and value to be given to their testimony are resolved by the trial court, not this court. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The burden of establishing that the evidence preponderates otherwise is on petitioner. *Henley*, 960 S.W.2d at 579.

In the instant case, Petitioner contends there are seven areas before and during trial where counsel was ineffective. Petitioner's first contention is that his trial counsel told him that he had never "had a criminal case." However, trial counsel testified at the hearing that he had worked part-time for a year at the public defender's office after he graduated from law school. Counsel testified that he handled more than a hundred criminal cases. The trial judge found Counsel's testimony credible in this regard. The trial judge's findings of fact on post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise. *Burns*, 6 S.W.3d at 461. The trial court found counsel's testimony regarding his qualifications as a criminal defense attorney to be credible; therefore, Petitioner is not entitled to relief on this ground.

Petitioner's second and third arguments contend that counsel was deficient because he did not adequately confer with Petitioner before the trial nor did he share the results of the motion for discovery. Petitioner testified that he spoke with counsel only three or four times before the trial and

that this was only in regard to plea agreements offered by the State. Petitioner also testified that he and his co-defendant did meet with his trial counsel and the co-defendant's counsel on a separate occasion and discussed the case and trial strategy. On cross examination, Petitioner admitted speaking to and visiting with trial counsel's assistant numerous times.

Trial counsel testified that he made numerous attempts to speak with Petitioner on the telephone and while they may have only met in person on three or four occasions, they did in fact speak on the telephone. Counsel further testified that he gave Petitioner his business card and told him to stay in touch. Counsel stated that he and Petitioner agreed that his only defense was that the drugs belonged to his girlfriend and not to him. Counsel testified that he pursued this defense by calling the girlfriend/co-defendant as a witness. Petitioner conceded on cross-examination that the jury simply did not believe his theory.

Counsel testified that he gave Petitioner a copy of the indictment and discussed the results of the discovery motion with Petitioner. Petitioner testified that he requested the discovery on various occasions and that he did not receive it from counsel. Petitioner did admit to having a conversation in which Counsel informed him that the State did not have to tell him who "snitched on him." Once again, the trial judge accredited Counsel's testimony that he adequately conferred with the Petitioner and that he shared the discovery with him.

Petitioner complains about trial counsel's failure to pursue a suppression motion regarding the search of Petitioner's home. Petitioner contends that had counsel made this motion the case would have been "thrown out." Petitioner argues that the police officers finished the search of the trailers and then waited for him to come home. Counsel testified that he did not see any basis to challenge the search and that was why he did not file a suppression motion. The appellate record before us does not include the search warrant at issue; therefore we are unable to address whether or not trial counsel was deficient in not filing the motion.

Petitioner's fifth argument is that trial counsel did not inform him of the advantages or disadvantages of testifying at trial. Petitioner chose to testify and admitted that counsel told him that his testifying "could open up this or open up that" but not that the State could inquire into his past convictions. However, although the State did ask if Petitioner had a criminal record, Petitioner did not have to answer because the State failed to file notice of impeachment pursuant to Tennessee Rule of Evidence 609 (a) (3) prior to trial.

Petitioner's next contention is that trial counsel failed to interview or call witnesses to testify. According to the post-conviction hearing record, trial counsel called the co-defendant, the mother of the defendant, and the defendant as witnesses for the defense. Counsel testified that he did not feel there was any real reason to call the mother of the defendant to testify, but because Petitioner wanted to, he obliged. Petitioner argued that his mother was not properly questioned at trial. Petitioner also claimed that trial counsel did not properly interview her before trial. Defendant's mother testified that she spoke with trial counsel for about five minutes prior to testifying. Petitioner called his mother to testify at the post-conviction hearing in order to allow her to "be properly questioned."

-6-

However, the trial judge found her testimony to have added nothing of value to the proof. We agree that trial counsel was not deficient in the questions asked of Petitioner's mother.

Petitioner also contended that counsel should have called his nieces to testify. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); *see also Scott v. State*, 936 S.W.2d 271, 273 (Tenn. Crim. App. 1996). As a general rule, this is the only way the petitioner can establish that (1) a material witness existed who could have been discovered but for counsel's negligent investigation of the case; (2) a known witness was not interviewed; (3) the failure to discover or interview the witness caused him prejudice; or (4) the failure to present a known witness or call the witness to the stand resulted in the denial of critical evidence which caused the petitioner prejudice. *Black*, 794 S.W.2d at 757. Neither the trial court nor this court can speculate on what a witness' testimony might have been if introduced by counsel. *Id*. Petitioner did not call his nieces to testify at the post-conviction hearing, therefore this court cannot determine whether or not Petitioner was prejudiced as to the omission of their testimony from trial.

Petitioner's last argument is that trial counsel did not utilize the fact that Petitioner's co-defendant pled guilty and accepted responsibility for the same charges. Trial counsel called the co-defendant to testify on Petitioner's behalf. She testified that the drugs were hers and not Petitioner's. Even with this testimony the jury convicted Petitioner. It is the prerogative of the jury to determine who is credible and who is not. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Petitioner concedes that trial counsel called the co-defendant to the stand to testify in his behalf and that the jury did not believe her. Accordingly, this issue is also without merit and Petitioner is not entitled to relief.

## CONCLUSION

For the foregoing reasons, we conclude that trial counsel did not render ineffective assistance of counsel; therefore, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE